IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FIRSTMERIT BANK, N.A.**, a national banking )
association, as successor in interest to the FDIC, )
as receiver for Midwest Bank and Trust Company, )
)
                Plaintiff, )
)
     v. )    Case No. 13 C 6571
)
**STAVE PROPERTIES, INC.**; )
**JOSEPH BETANCOURT**; and )
**ROBERT FERRARI, SR.**, )
)
                Defendants. )

## MEMORANDUM OPINION AND ORDER

In this action brought by FirstMerit Bank, N.A. ("FirstMerit"), as successor in interest to original mortgagee Midwest Bank and Trust Company, in which FirstMerit seeks mortgage foreclosure and other relief against mortgagor Stave Properties, Inc. ("Stave") and Joseph Betancourt ("Betancourt") and Robert Ferrari, Sr. ("Ferrari") (the latter two both as guarantors of the Stave mortgage and note and as mortgagors of other properties), defendants have sought to turn the tables by advancing no fewer than five Counterclaims as well as their Answer to FirstMerit's Complaint: In those Counterclaims defendants charge a violation of the Equal Credit Opportunity Act ("Act") in failing to provide appraisals (Count I), another violation of the Act in failing to consummate a settlement agreement (Count II), a violation of 42 U.S.C. § 1981 ("Section 1981") by the same failure to provide appraisals (Count III), a violation of Section 1981 by the same failure to consummate the settlement agreement (Count IV) and conversion (Count V).

To begin with, page 2 of Defendants' Response to Plaintiff's 12(B)(6) Motion To Dismiss describes the gravamen of their counterattack on Counterclaims I through IV:

> The first four Counterclaims are predicated on the racial animus held by the Bank and at least one of its loan officers toward Hispanics. This animus led at least two forms of discriminatory conduct by the Bank: its refusal, through its loan officer, to provide Defendants with copies of appraisals for which they were charged, and its failure to consummate a purported settlement agreement.

And that entire edifice is sought to be erected on the foundation of this single remark that defendants ascribe to loan officer Daniel Stokes ("Stokes") in responding to one of the repeated requests for copies of those appraisals made by Hispanic defendant Betancourt:[1]

> It's enough, Joe. We normally don't give loans to Hispanics.
> Consider yourself lucky.

Because that statement (if made) will not reasonably carry the baggage that defendants seek to load onto it, FirstMerit's Rule 12(b)(6) motion to dismiss Counterclaims I through IV will be granted.

What defendants conveniently choose to ignore -- because it does not support their attempted conversion of a molehill-size comment by a loan officer into a mountain of discrimination by FirstMerit as an institution -- is that when their loan went into default, the decisionmaker at FirstMerit granted defendants a June 2012 Forbearance Agreement that gave them additional time to satisfy their obligations under the Stave mortgage note and the individuals' guaranties. And in that respect defendants have also conveniently failed to mention that in that Forbearance Agreement -- which was entered into <u>after</u> loan officer Stokes assertedly made the inappropriate "Hispanics" remark -- its Section 4(b) expressly <u>gave up</u> any right to file

---

[1] It is not at all clear that Stave and its principals were entitled to copies of those appraisals, which FirstMerit obtained for its own purposes in valuing the real estate involved for its lending decisions. This opinion need not explore that facet of the litigation, however.

any Counterclaims such as those that they now seek to advance, for defendants there "release[d], waive[d] and affirmatively agree[d] not to allege or otherwise pursue any . . . counterclaims . . . that they may have . . . to contest . . . the conduct of [FirstMerit] in administering the financing arrangements by and between [defendants] and [FirstMerit]."[2] Even apart from that separate nail in the coffin of the first four Counterclaims, there is not the slightest evidence, unless defense counsel's unsupported ipse dixit were incorrectly labeled as "evidence,"[3] that the ordinary business conduct of FirstMerit in connection with the defaulted mortgage loan would have been any different if Betancourt had been non-Hispanic.

At this point the identified deficiencies in Counterclaims I through IV are many indeed, and any one of a number of them would alone suffice to call for their dismissal. That being so, to add to those deficiencies might resemble the fabled piling of Pelion upon Ossa. But it is also worth remembering that in the field of employment discrimination our Court of Appeals has regularly found what it characterizes as "stray remarks" to be insufficient to support a finding of

---

[2] Though this Court should not of course be misunderstood as in any way excusing the race-based comment that defendants ascribe to FirstMerit's loan officer Stokes, defendants also gloss over (or more precisely, do not mention) the fact that Stave's President Ferrari is not Hispanic, although Betancourt (Stave's corporate Secretary) is.

[3] In addition to the flaws in defendants' Counterclaims identified in the text (both before and after this footnote), it is worth noting that the allegations in Counterclaim Counts II and IV as to FirstMerit's asserted "failure to consummate" the possible settlement that the parties had discussed said only this (Counterclaims ¶¶ 31 and 46):

> On information and belief, FirstMerit refused to consummate the settlement because Betancourt is Hispanic.

Although this Court cannot of course perform a trepanning operation, look down into the skulls of the individual defendants and see what their "belief"-- however illogical -- may be, they say nothing at all by way of identifying any purported supporting "information" -- a sure tipoff to the absence of the "plausibility" that is essential to meeting the Twombly-Iqbal standard of the viability of a claim.

race-based or other impermissibly-based discrimination. Here, for instance, is a recent example of such a statement by our Court of Appeals (Perez v. Thorntons, Inc., 731 F.3d 699, 709 (7th Cir. 2013) (internal citations and quotation marks omitted):

> Standing alone, biased comments do not establish discriminatory motive unless they were by the decision maker and can be connected to the decision. Isolated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus.

That seems an apt parallel to defense counsel's effort here to erect a race-based structure on a foundation that does not rationally support it -- a single race-referent comment by a loan officer for a bank from which defendants had in fact received some favorable treatment.

It should again be emphasized that, except for the absence of any plausible causal nexus between any purported race-based bias and the purported claims advanced in Counterclaim Counts I through IV, this Court expresses no views as to the viability or nonviability of defendants' claims that they should have been furnished copies of the appraisals at issue (but see n.1 as to possible doubts on that score) or should have gone through with a proposed settlement. Those are matters that are at issue via FirstMerit's Complaint and defendants' Answer. Instead this Court has determined that even with the benefit of reasonable inferences, those four Counterclaims have not surmounted the hurdle of "plausibility" established by the Twombly-Iqbal canon. As stated earlier, FirstMerit's Rule 12(b)(6) motion is granted to that extent and those Counterclaims are dismissed.

That leaves for consideration Counterclaim Count V, which sounds in the state law tort of conversion. For that purpose this Court follows the lead of the parties in defining the elements of that tort, for each side cites to and quotes the opinion in Sandy Creek Condo. Ass'n v. Stolt & Egner, Inc., 267 Ill. App. 3d 291, 294, 642 N.E.2d 171, 174 (2d Dist. 1994):

> To sustain a cause of action for conversion of funds, the plaintiff must establish by a preponderance of the evidence: (1) the unauthorized and wrongful assumption of control, dominion, or ownership by defendant over the personal property of another; (2) the plaintiff's right in the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) a demand for possession of the property.

As defendants would have it, FirstMerit's action in exercising its rights via setoff on Stave's checking account (an action specifically authorized by the unambiguous terms of Stave's mortgage note) constituted a conversion because that action also impacted the security deposits that had been supplied by Stave's residential tenants and that Stave had placed in its own account. On that score defendants point to Chicago Ordinance § 5-12-080(a), which provides in part that security deposits held by a landlord are not "subject to the claims of any creditor of the landlord." But once again defendants have been guilty of impermissibly selective citation to relevant authority, for they have failed to quote the highly relevant component of that ordinance section to which emphasis has been added in the following full quotation of the ordinance:

> <u>A security deposit and interest due thereon shall continue to be the property of the tenant making such deposit, shall not be commingled with the assets of the landlord</u>, and shall not be subject to the claims of any creditor of the landlord or of the landlord's successors in interest, including a foreclosing mortgagee or trustee in bankruptcy.

It is unquestionable that Stave had violated that prohibition against commingling, and that FirstMerit had no knowledge of (and no reason to know about) that violation, when FirstMerit exercised its unconditional right to latch onto Stave's own checking account. Moreover, the situation also poses the interesting legal question whether the elements of conversion set out in <u>Sandy Creek</u> entitle Stave to enforce its tenants' rights to the funds. And other issues may lurk in the situation before this Court as well -- for example, does the doctrine of in pari delicto apply to such a situation?

It should be said parenthetically that defense counsel do themselves no credit by arguing at page 14 of their response (1) that this Court's "analysis is limited to the four corners of defendants' counterclaims, and the Court cannot consider additional matters outside of the pleadings," and (2) that Counterclaim Count V "does not allege that Stave commingled security deposits with his [sic] own funds." That lame effort to squirm out from under the basic fallacy in defendants' position is totally at odds with the fact that the Counterclaim specifically rests on the existence of tenants' security deposits in Stave's checking account, which is the sole basis for defendants placing FirstMerit's conduct at issue in Counterclaim Count V.

But to return to the merits, it would be a solecism to uphold an actual conversion claim under the circumstances presented here. Instead Counterclaim Count V will also be dismissed, but on condition that:

1. Stave must provide FirstMerit with (a) a specific accounting of the tenants' security deposits that were commingled with Stave's own funds at the time that FirstMerit acted to reach Stave's checking account, coupled with (b) the designation of a separate trust account that Stave will have established to hold such funds in trust (thus curing its own violation of the Chicago ordinance) and

2. FirstMerit must then promptly release or remit the appropriate amount into that trust fund account.

## Conclusion

For the reasons stated in this memorandum opinion and order, First Merit's motion is granted in its entirety -- all of Counterclaim Counts I through V are dismissed, although some

conditions have been placed on the last Counterclaim's dismissal. That eliminates all of the potential separate impediments to FirstMerit's pursuit of its own claims, and the status hearing previously scheduled for 9 a.m. July 16, 2014 will be devoted to that subject.

                                              Milton I. Shadur
                                              Senior United States District Judge

Date:  July 9, 2014